

JUL 27 2023

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF MOTO G PURE, CURRENTLY LOCATED AT 111 COURT AVENUE, NEWPORT, TENNESSEE | Case No. 2:23-mj-154 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Detective Lieutenant Michael Whitmer, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer with the Homeland Security Investigations and have been since May 12, 2021. I am a Detective with the Cocke County Sheriff's Office assigned to conduct criminal investigations in the jurisdictional limits of Cocke County, TN. I have been employed by the Cocke County Sheriff's Office since May of 2008. During my employment, I have served in many positions including Correctional Officer, Patrol Deputy, Patrol Sergeant, and Patrol Lieutenant, and I am currently a Detective Lieutenant in the Criminal Investigation Division since March of 2020. I am also a member of the Tennessee Internet Crimes Against Children (ICAC) Task Force and a Homeland Security Investigations Task Force Officer with the Johnson City Field Office. I have attended the following specialized trainings: University of

Tennessee County Technical Assistance Service – Law Enforcement Leadership Seminar; National Forensic Academy – Crime Scene Operations; John E. Reid and Associates – The Reid Technique of Investigative Interviewing and Advanced Interrogation; and Cellebrite Certified Operator and Physical Analyzer. In May of 2020 I received an Associate of Applied Science Degree in law enforcement and am currently enrolled at Bethel University obtaining a bachelor's degree in criminal justice. I have been involved in and have made multiple criminal arrests during my employment at the Cocke County Sheriff's Office, and as a result, I have gained considerable experience.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant that violations of 18 U.S.C. 2251(a) and (e), 18 U.S.C. 2422(b), 18 U.S.C. 2252A(a)(2)(A) and (b)(1), 18 U.S.C. 2252A(a)(5)(B) and (b)(2), 18 U.S.C. 1470, 18 U.S.C. 2260A, have been committed and does not set forth all my knowledge about this matter. 1.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Motorola Moto G Pure (XT2163-4) blue in color with black rubberized case, serial number ZY22DQPJRH, hereinafter the "Device." The Device is currently in the possession of law enforcement, located at 111 Court Avenue, Newport, Cocke County, Tennessee.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On February 7, 2023, I was asked to appear before the Cocke County Juvenile Court by Judge Mark Strange. Judge Strange had before him a juvenile case in which a 16-year-

2

old female E.M. had been "sexting" with a 35-year-old male believed to be in Wisconsin who was using the Google username angelkerr757@gmail.com. The juvenile victim's mother, Katrina Rial, believed that the male with whom E.M. had been "sexting" was Daniel R. Turner, who is registered with the Wisconsin Department of Corrections Sex Offender Registry. Juvenile victim E.M. was reportedly using a Chromebook computer issued to her by the Cocke County School System to communicate with the alleged perpetrator. Safety Director Casey Kelley was able to locate a conversation in their archives between E.M. and Google username angelkerr757@gmail.com.

7. Legal process was provided to the school system for E.M.'s electronic activity. Email messages were found between 2025emcnett@cocke.k12.tn.us which is E.M.'s issued school account and angelkerr757@gmail.com which is believed to be one of Turner's email addresses. According to the time stamp on the messages, this conversation began on 01-17-2023 and continued until 01-20-2023. Some of the email messages included photo attachments of E.M. sent to Turner and of Turner sent to E.M. The messages sent using the school email were sexually suggestive but not very explicit. There was a photo sent from angelkerr757@gmail.com to E.M. confirming that it was Daniel Turner.

8. According to the juvenile victim's mother, this is not the first time she has caught E.M. talking to this same male. In November of 2021, Captain Bob Schaff with the Cocke County Sheriff's Office investigated an incident, case number 2111-01022. In Officer Schaff's report, E.M. was using the internet chat service Y99.in to communicate with Daniel Turner. A cell phone was taken into evidence with this case and was still being stored in the custody of the Cocke County Sheriff's Office. Captain Schaff had obtained written consent to search for the cell phone E.M. was using to communicate with Turner. On this phone, I was able to access chat

3

messages between E.M. (username emmamc) and Turner (usernames Dan22Taken, Dan32112, & The_real_dan33). The messages between the users were sexually explicit in nature, and Turner had asked for nude photographs and videos multiple times.

9. Legal process was provided to Y99.in requesting subscriber information and chat messages with content between E.M. and Turner's various accounts.

10. The requested records indicated that username "emmamc" is linked to the email 2025emmcnett@cocke.k12.tn.us. The username "The_real_dan33" was linked to the email address danturner3346@gmail.com. This email address was also found registered with Daniel R Turner's sex offender registry. The conversation between these usernames began on 09-27-2021 in which Turner states he is 32 years old and E.M. states she is 15 years old. The conversation on this day continues and the two exchange unknown photos until Turner states "I have one other but I will tell u that I'm not really big." The chat log indicates that Turner sends an image followed by "Please don't laugh" and "I'm not hard either." He then asks E.M. "Would u want it?" On 09-28-2021 Turner provides his phone number to E.M. as 262-359-0645.

11. The conversation continues between E.M. (emmamc) and Turner on username "Dan22Taken." This username was linked to the email address angelkerr757@gmail.com. The conversation continues from 09-28-2021 until 11-03-2021 when E.M.'s mother discovers the conversations. Between these dates, E.M. and Turner have sexually explicit conversations, including Turner requesting nude photos and videos of E.M. The phone which was seized from E.M. in 2021 contained pornographic images of E.M. which are believed to have been taken and sent to Turner at his request.

4

12. On 07-25-2022 the two reunite on Y99.in with the usernames emmamc and Dan32112. E.M. using her original username and Turner using Dan32112, which was also created using the email angelkerr757@gmail.com. During their chat reunion, E.M. tells Turner "im 16 now" and makes her guess that he is 34 years old now and states his birthday was in February. This conversation also turns sexually explicit in which they exchange photos and Turner details what he would like to do to her. They also discuss getting married and having babies.

13. On 02-27-2023, E.M. participated in a forensic interview at Safe Harbor of the Smokies CAC in Sevierville, TN. During the forensic interview, E.M. details how she met Turner on Y99.in chat. The conversations were casual at first and she made Turner aware of how old she was. E.M. and Turner gradually began talking more frequently until they began "dating." As it progressed, she allegedly got "creeped out" but continued talking to him. When he would ask for nude photos, she didn't want to comply, and resisted at first, but then began sending him nude photos of her breasts and vagina as he requested. E.M. confirmed that Turner sent her unsolicited nude photos of his penis.

14. I confirmed that Daniel Turner is a registered sex offender with the Wisconsin Department of Corrections after being convicted on 02-21-2007 of Predatory Criminal Sexual Assault of a Child in Lake County Circuit Court of Illinois.

15. The above information was presented to the Federal grand Jury of the Eastern District of Tennessee, in Greeneville. The defendant was indicted by the Grand Jury for the Eastern District of Tennessee at Greeneville on April 11, 2023 in case number 2:23-cr-43. The defendant was charged with following offenses:

5

      i. Count One: Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e);

      ii. Count Two: Enticement of a minor, in violation of 18 U.S.C. § 2422(b);

      iii. Count Three: Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1);

      iv. Count Four: Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(A) and (b)(2);

      v. Count Five: Transfer of Obscene Material to a person who has not attained the age of sixteen years, in violation of 18 U.S.C. § 1470;

      vi. Count Six: A registered sex offender, did commit a felony offense involving a minor under Title 18, United States Code, Section 2251 and 2422, to wit: the offenses alleged in counts One and Two, of this Indictment, in violation of 18 U.S.C. § 2260A.

16. Turner was arrested on 06/28/2023 by HSI agents in Wisconsin for the arrest warrant issued by this court on 04/11/2023. At the time of his arrest, Turner was in possession of the Device, which was seized by the arresting agents.

17. The Device is currently in the lawful possession of the Cocke County Sheriff's Office. It came into the Cocke County Sheriff's Office's possession in the following way: Delivered to the Cocke County Sheriff's Office by FedEx from the arresting HSI agent. Therefore, while the Cocke County Sheriff's Office might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

6

Case 2:23-mj-00154-CRW   Document 2   Filed 07/27/23   Page 6 of 15   PageID #: 7

18. The Device is currently in storage at 111 Court Avenue, Newport, Cocke County, Tennessee. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Cocke County Sheriff's Office.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

8

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

9

borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.motorola.ca/smartphones-moto-g-pure/p?skuId=247, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

10

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

11

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Det Lt Michael Whitmer*
Detective Lt. Michael Whitmer
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me
on July 26, 2023:

*Cynthia Ralph Wyle*
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

The property to be searched is a Motorola Moto G Pure (XT2163-4) blue in color with black rubberized case, serial number ZY22DQPJRH, hereinafter the "Device." The Device is currently in the possession of law enforcement, located at 111 Court Avenue, Newport, Cocke County, Tennessee.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of (18 U.S.C. 2251(a) and (e)), (18 U.S.C. 2422(b), (18 U.S.C. 2252A(a)(2)(A) and (b)(1)), (18 U.S.C. 2252A(a)(5)(B) and (b)(2)), (18 U.S.C. 1470), (18 U.S.C. 2260A), including child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2) or child erotica.

2. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

3. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

4. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider, specifically Y99.in.

5. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other

digital data files) evidencing the use of the Device to access Google Services or Y99.in websites including records of Internet activity, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

6. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

7. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to ownership of the device described above.

9. Any and all records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

2